**Fill in this information to identify the case:**

United States Bankruptcy Court for the:
Northern District of Texas (State)

Case number (*If known*): ____________ Chapter 7

☐ Check if this is an amended filing

Official Form 205

# Involuntary Petition Against a Non-Individual

**12/15**

**Use this form to begin a bankruptcy case against a non-individual you allege to be a debtor subject to an involuntary case. If you want to begin a case against an individual, use the *Involuntary Petition Against an Individual* (Official Form 105). Be as complete and accurate as possible. If more space is needed, attach any additional sheets to this form. On the top of any additional pages, write debtor's name and case number (if known).**

## Part 1: Identify the Chapter of the Bankruptcy Code Under Which Petition Is Filed

1. **Chapter of the Bankruptcy Code**

*Check one:*

☒ Chapter *7*
☐ Chapter 11

## Part 2: Identify the Debtor

2. **Debtor's name**

WALL016 LLC

3. **Other names you know the debtor has used in the last 8 years**

Include any assumed names, trade names, or *doing business as* names.

______________________
______________________
______________________

4. **Debtor's federal Employer Identification Number (EIN)**

☒ Unknown

__ __ – __ __ __ __ __ __ __
EIN

5. **Debtor's address**

**Principal place of business**

13901 Midway Rd., Ste. 102
Number Street

______________________

Dallas TX 75244
City State ZIP Code

Dallas
County

**Mailing address, if different**

______________________
Number Street

______________________
P.O. Box

______________________
City State ZIP Code

**Location of principal assets, if different from principal place of business**

______________________
Number Street

______________________

______________________
City State ZIP Code

Debtor WALL016 LLC
Name

Case number (if known)________________

6. **Debtor's website** (URL) N/A

7. **Type of debtor**

- [X] Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
- [ ] Partnership (excluding LLP)
- [ ] Other type of debtor. Specify: ________________

8. **Type of debtor's business**

*Check one:*

- [ ] Health Care Business (as defined in 11 U.S.C. § 101(27A))
- [X] Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
- [ ] Railroad (as defined in 11 U.S.C. § 101(44))
- [ ] Stockbroker (as defined in 11 U.S.C. § 101(53A))
- [ ] Commodity Broker (as defined in 11 U.S.C. § 101(6))
- [ ] Clearing Bank (as defined in 11 U.S.C. § 781(3))
- [ ] None of the types of business listed.
- [ ] Unknown type of business.

9. **To the best of your knowledge, are any bankruptcy cases pending by or against any partner or affiliate of this debtor?**

- [X] No
- [ ] Yes. Debtor ________________ Relationship ________________

District ________________ Date filed ________ MM / DD / YYYY Case number, if known________________

Debtor ________________ Relationship ________________

District ________________ Date filed ________ MM / DD / YYYY Case number, if known________________

## Part 3: Report About the Case

10. **Venue**

*Check one:*

- [X] Over the last 180 days before the filing of this bankruptcy, the debtor had a domicile, principal place of business, or principal assets in this district longer than in any other district.
- [ ] A bankruptcy case concerning debtor's affiliates, general partner, or partnership is pending in this district.

11. **Allegations**

Each petitioner is eligible to file this petition under 11 U.S.C. § 303(b).

The debtor may be the subject of an involuntary case under 11 U.S.C. § 303(a).

*At least one box must be checked*:

- [X] The debtor is generally not paying its debts as they become due, unless they are the subject of a bona fide dispute as to liability or amount.
- [ ] Within 120 days before the filing of this petition, a custodian, other than a trustee, receiver, or an agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

12. **Has there been a transfer of any claim against the debtor by or to any petitioner?**

- [X] No
- [ ] Yes. Attach all documents that evidence the transfer and any statements required under Bankruptcy Rule 1003(a).

Debtor WALL016 LLC
Name

Case number (*if known*)

| 13. **Each petitioner's claim** | **Name of petitioner** | **Nature of petitioner's claim** | **Amount of the claim above the value of any lien** |
|---|---|---|---|
| | Yijing Wu | Loan Debt | $ 333,287.67 |
| | Li Jiang | Loan Debt | $ 33,000.00 |
| | Qin Chu | Loan Debt | $ 40,000.00 |
| | | Total of petitioners' claims | $ 502,287.67* |

*See attached list of additional Petitioning Creditors

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

Petitioners request that an order for relief be entered against the debtor under the chapter of 11 U.S.C. specified in this petition. If a petitioning creditor is a corporation, attach the corporate ownership statement required by Bankruptcy Rule 1010(b). If any petitioner is a foreign representative appointed in a foreign proceeding, attach a certified copy of the order of the court granting recognition.

I have examined the information in this document and have a reasonable belief that the information is true and correct.

**Petitioners or Petitioners' Representative**

**Name and mailing address of petitioner**

Yijing Wu
Name

8-2607, Xuante Jiayuan, No. 1 Shilibao
Number Street

Chaoyang District, Beijing, China
City State ZIP Code

**Name and mailing address of petitioner's representative, if any**

Name

Number Street

City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 4/2/2020
MM / DD / YYYY

DocuSigned by:
✘ Yijing Wu
4018D14BC4804EC...
Signature of petitioner or representative, including representative's title

**Attorneys**

Jiangang Ou, Esquire
Printed name

Nguyen & Chen, LLP
Firm name, if any

11200 Westheimer, Ste. 120
Number Street

Houston TX 77042
City State ZIP Code

Contact phone 832-767-0339 Email jou@nguyen-chen.com

Bar number 5451133

State NY

✘ /s/ Jiangang Ou
Signature of attorney

Date signed 04/08/2020
MM / DD / YYYY

Debtor WALL016 LLC
Name

Case number (if known) __________________________

**Name and mailing address of petitioner**

Li Jiang
Name

1-5-401, North Dormitory, Haidian Health Bureau
Number Street

Qinghe 3rd Street, Haidian District, Beijing, China
City State ZIP Code

**Name and mailing address of petitioner's representative, if any**

Name

Number Street

City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 3/21/2020
MM / DD / YYYY

DocuSigned by:
Li Jiang
213B9408FBED46E...
Signature of petitioner or representative, including representative's title

Stephen M. Packman, Esquire
Printed name

Archer & Greiner, P.C.
Firm name, if any

Three Logan Square
1717 Arch St., Ste. 3500
Number Street

Philadelphia PA 19103
City State ZIP Code

Contact phone 215-246-3147 Email spackman@archerlaw.com

Bar number 018271989; 57283; 2749356

State NJ; PA; NY

/s/ Stephen M. Packman
Signature of attorney

Date signed 04/08/2020
MM / DD / YYYY

**Name and mailing address of petitioner**

Qin Chu
Name

No. 13 Plant Building, No. 8 Hangdu Rd., Damaiwan Industrial
Number Street

District, Hangtou Town, Pudong New Area, Shanghai, China
City State ZIP Code

**Name and mailing address of petitioner's representative, if any**

Name

Number Street

City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ________
MM / DD / YYYY

Signature of petitioner or representative, including representative's title

Printed name

Firm name, if any

Number Street

City State ZIP Code

Contact phone ________ Email ________

Bar number ________

State ________

Signature of attorney

Date signed ________
MM / DD / YYYY

Debtor WALL016 LLC
Name

Case number (if known)__________

**Name and mailing address of petitioner**

Li Jiang
Name

1-5-401, North Dormitory, Haidian Health Bureau
Number Street

Qinghe 3rd Street, Haidian District, Beijing, China
City State ZIP Code

**Name and mailing address of petitioner's representative, if any**

Name

Number Street

City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ________
MM / DD / YYYY

✘ __________
Signature of petitioner or representative, including representative's title

Stephen M. Packman, Esquire
Printed name

Archer & Greiner, P.C.
Firm name, if any

Three Logan Square
1717 Arch St., Ste. 3500
Number Street

Philadelphia PA 19103
City State ZIP Code

Contact phone 215-246-3147 Email spackman@archerlaw.com

Bar number 018271989; 57283; 2749356

State NJ; PA; NY

✘ __________
Signature of attorney

Date signed ________
MM / DD / YYYY

**Name and mailing address of petitioner**

Qin Chu
Name

No. 13 Plant Building, No. 8 Hangdu Rd., Damaiwan Industrial
Number Street

District, Hangtou Town, Pudong New Area, Shanghai, China
City State ZIP Code

**Name and mailing address of petitioner's representative, if any**

Name

Number Street

City State ZIP Code

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 3/23/2020
MM / DD / YYYY

DocuSigned by:
✘ Qin Chu
C0E7ADA7861E41E...
Signature of petitioner or representative, including representative's title

Printed name

Firm name, if any

Number Street

City State ZIP Code

Contact phone ________ Email ________

Bar number ________

State ________

✘ __________
Signature of attorney

Date signed ________
MM / DD / YYYY

**ADDITIONAL PETITIONING CREDITORS**

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Yulan Chen | Loan Debt | $15,000.00 |
| Sicheng Zhan | Loan Debt | $13,000.00 |
| Pei Guan | Loan Debt | $12,000.00 |
| Jingqiu Tang | Loan Debt | $11,000.00 |
| Di Tang | Loan Debt | $10,000.00 |
| Jun Zeng | Loan Debt | $10,000.00 |
| Kui Wang | Loan Debt | $10,000.00 |
| Yue Zhang | Loan Debt | $10,000.00 |
| Jun Wang | Loan Debt | $5,000.00 |

**Name and mailing address of petitioner**
Yulan Chen
Room 12-303, No.1065, Gu Long Road,
Shanghai, China

DocuSigned by:
X Yulan Chen ________ 3/23/2020
04838D531BC14A3...

**Name and mailing address of petitioner**
Sicheng Zhan
3001 Biyadi Road, Pingshan District,
Shenzhen, Guangdong,China

X________________________________

**Name and mailing address of petitioner**
Pei Guan
Rm 102, Jia, Building 7, Kouzhong Beili,
Xicheng District, Beijing, China

X________________________________

**Name and mailing address of petitioner**
Jingqiu Tang
4-1804, Ronghui Jiangshan, No 289 West
Yangqiao Rd, Fuzhou, Fujian, China

X________________________________

## ADDITIONAL PETITIONING CREDITORS

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Yulan Chen | Loan Debt | $15,000.00 |
| Sicheng Zhan | Loan Debt | $13,000.00 |
| Pei Guan | Loan Debt | $12,000.00 |
| Jingqiu Tang | Loan Debt | $11,000.00 |
| Di Tang | Loan Debt | $10,000.00 |
| Jun Zeng | Loan Debt | $10,000.00 |
| Kui Wang | Loan Debt | $10,000.00 |
| Yue Zhang | Loan Debt | $10,000.00 |
| Jun Wang | Loan Debt | $5,000.00 |

**Name and mailing address of petitioner**
Yulan Chen
Room 12-303, No.1065, Gu Long Road,
Shanghai, China

X___________________________________

**Name and mailing address of petitioner**
Sicheng Zhan
3001 Biyadi Road, Pingshan District,
Shenzhen, Guangdong,China

DocuSigned by:
X Sicheng Zhan 3/21/2020
DCF03F72A019452...

**Name and mailing address of petitioner**
Pei Guan
Rm 102, Jia, Building 7, Kouzhong Beili,
Xicheng District, Beijing, China

X___________________________________

**Name and mailing address of petitioner**
Jingqiu Tang
4-1804, Ronghui Jiangshan, No 289 West
Yangqiao Rd, Fuzhou, Fujian, China

X___________________________________

## ADDITIONAL PETITIONING CREDITORS

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Yulan Chen | Loan Debt | $15,000.00 |
| Sicheng Zhan | Loan Debt | $13,000.00 |
| Pei Guan | Loan Debt | $12,000.00 |
| Jingqiu Tang | Loan Debt | $11,000.00 |
| Di Tang | Loan Debt | $10,000.00 |
| Jun Zeng | Loan Debt | $10,000.00 |
| Kui Wang | Loan Debt | $10,000.00 |
| Yue Zhang | Loan Debt | $10,000.00 |
| Jun Wang | Loan Debt | $5,000.00 |

**Name and mailing address of petitioner**
Yulan Chen
Room 12-303, No.1065, Gu Long Road,
Shanghai, China

X_________________________________

**Name and mailing address of petitioner**
Sicheng Zhan
3001 Biyadi Road, Pingshan District,
Shenzhen, Guangdong,China

X_________________________________

**Name and mailing address of petitioner**
Pei Guan
Rm 102, Jia, Building 7, Kouzhong Beili,
Xicheng District, Beijing, China

DocuSigned by:
X Pei Guan 3/22/2020
48E869D934834A4...

**Name and mailing address of petitioner**
Jingqiu Tang
4-1804, Ronghui Jiangshan, No 289 West
Yangqiao Rd, Fuzhou, Fujian, China

X_________________________________

**ADDITIONAL PETITIONING CREDITORS**

| Name of petitioner | Nature of petitioner's claim | Amount of the claim above the value of any lien |
|---|---|---|
| Yulan Chen | Loan Debt | $15,000.00 |
| Sicheng Zhan | Loan Debt | $13,000.00 |
| Pei Guan | Loan Debt | $12,000.00 |
| Jingqiu Tang | Loan Debt | $11,000.00 |
| Di Tang | Loan Debt | $10,000.00 |
| Jun Zeng | Loan Debt | $10,000.00 |
| Kui Wang | Loan Debt | $10,000.00 |
| Yue Zhang | Loan Debt | $10,000.00 |
| Jun Wang | Loan Debt | $5,000.00 |

**Name and mailing address of petitioner**
Yulan Chen
Room 12-303, No.1065, Gu Long Road,
Shanghai, China

X____________________________________

**Name and mailing address of petitioner**
Sicheng Zhan
3001 Biyadi Road, Pingshan District,
Shenzhen, Guangdong,China

X____________________________________

**Name and mailing address of petitioner**
Pei Guan
Rm 102, Jia, Building 7, Kouzhong Beili,
Xicheng District, Beijing, China

X____________________________________

**Name and mailing address of petitioner**
Jingqiu Tang
4-1804, Ronghui Jiangshan, No 289 West
Yangqiao Rd, Fuzhou, Fujian, China

DocuSigned by:
X Jingqiu Tang 3/21/2020
ACF7CC4E584C48D...

**ADDITIONAL PETITIONING CREDITORS**

**Name and mailing address of petitioner**
Di Tang
F05-05C, Fenglin Lvzhou, Datun Rd,
Chaoyang District, Beijing, China

DocuSigned by:
X________________ 3/30/2020
1B99C82DCCFA404...

**Name and mailing address of petitioner**
Jun Zeng
Room 232, No. 21 Er Wei Rd., Shen He
District, Shenyang City, Liao Ning Province,
China

X________________________________

**Name and mailing address of petitioner**
Kui Wang
Rm. 1103, No. 18, Baiwanzhuang Rd.,
Xicheng District, Beijing, China

X________________________________

**Name and mailing address of petitioner**
Yue Zhang
Room 1-304, Building No. 9,
Tianzhaojiayuan, No. 41 Xizhimen N Street,
Haidian District, Beijing, China

X________________________________

**Name and mailing address of petitioner**
Jun Wang
Rm 1602, No. 38, Shanglongxili Community,
Anding Menwai Street, Dongcheng District,
Beijing, China

X________________________________

**ADDITIONAL PETITIONING CREDITORS**

**Name and mailing address of petitioner**
Di Tang
F05-05C, Fenglin Lvzhou, Datun Rd,
Chaoyang District, Beijing, China

X____________________________________

**Name and mailing address of petitioner**
Jun Zeng
Room 232, No. 21 Er Wei Rd., Shen He
District, Shenyang City, Liao Ning Province,
China

DocuSigned by:
X Zeng Jun 3/24/2020
863965F351CA495...

**Name and mailing address of petitioner**
Kui Wang
Rm. 1103, No. 18, Baiwanzhuang Rd.,
Xicheng District, Beijing, China

X____________________________________

**Name and mailing address of petitioner**
Yue Zhang
Room 1-304, Building No. 9,
Tianzhaojiayuan, No. 41 Xizhimen N Street,
Haidian District, Beijing, China

X____________________________________

**Name and mailing address of petitioner**
Jun Wang
Rm 1602, No. 38, Shanglongxili Community,
Anding Menwai Street, Dongcheng District,
Beijing, China

X____________________________________

**ADDITIONAL PETITIONING CREDITORS**

**Name and mailing address of petitioner**
Di Tang
F05-05C, Fenglin Lvzhou, Datun Rd,
Chaoyang District, Beijing, China

X________________________________

**Name and mailing address of petitioner**
Jun Zeng
Room 232, No. 21 Er Wei Rd., Shen He
District, Shenyang City, Liao Ning Province,
China

X________________________________

**Name and mailing address of petitioner**
Kui Wang
Rm. 1103, No. 18, Baiwanzhuang Rd.,
Xicheng District, Beijing, China

DocuSigned by:
X________________________________ 3/22/2020
18A3C786642948A...

**Name and mailing address of petitioner**
Yue Zhang
Room 1-304, Building No. 9,
Tianzhaojiayuan, No. 41 Xizhimen N Street,
Haidian District, Beijing, China

X________________________________

**Name and mailing address of petitioner**
Jun Wang
Rm 1602, No. 38, Shanglongxili Community,
Anding Menwai Street, Dongcheng District,
Beijing, China

X________________________________

**ADDITIONAL PETITIONING CREDITORS**

**Name and mailing address of petitioner**
Di Tang
F05-05C, Fenglin Lvzhou, Datun Rd,
Chaoyang District, Beijing, China

X____________________________________

**Name and mailing address of petitioner**
Jun Zeng
Room 232, No. 21 Er Wei Rd., Shen He
District, Shenyang City, Liao Ning Province,
China

X____________________________________

**Name and mailing address of petitioner**
Kui Wang
Rm. 1103, No. 18, Baiwanzhuang Rd.,
Xicheng District, Beijing, China

X____________________________________

**Name and mailing address of petitioner**
Yue Zhang
Room 1-304, Building No. 9,
Tianzhaojiayuan, No. 41 Xizhimen N Street,
Haidian District, Beijing, China

DocuSigned by:
X Yue Zhang 3/21/2020
0CBE0AE2950E48F...

**Name and mailing address of petitioner**
Jun Wang
Rm 1602, No. 38, Shanglongxili Community,
Anding Menwai Street, Dongcheng District,
Beijing, China

X____________________________________

218162549v1

**ADDITIONAL PETITIONING CREDITORS**

**Name and mailing address of petitioner**
Di Tang
F05-05C, Fenglin Lvzhou, Datun Rd,
Chaoyang District, Beijing, China

X________________________________________

**Name and mailing address of petitioner**
Jun Zeng
Room 232, No. 21 Er Wei Rd., Shen He
District, Shenyang City, Liao Ning Province,
China

X________________________________________

**Name and mailing address of petitioner**
Kui Wang
Rm. 1103, No. 18, Baiwanzhuang Rd.,
Xicheng District, Beijing, China

X________________________________________

**Name and mailing address of petitioner**
Yue Zhang
Room 1-304, Building No. 9,
Tianzhaojiayuan, No. 41 Xizhimen N Street,
Haidian District, Beijing, China

X________________________________________

**Name and mailing address of petitioner**
Jun Wang
Rm 1602, No. 38, Shanglongxili Community,
Anding Menwai Street, Dongcheng District,
Beijing, China

DocuSigned by:
X Jun Wang
E631C736E765451... 3/23/2020

218162549v1

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL016, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF YIJING WU IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 4/2/2020

DocuSigned by:
Yijing Wu
4018D14BC4804EC...
YIJING WU

218182842v1

# MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding (MOU) is intended to be the basis for an ongoing established relationship between Seagoville Farms, LLC and Ms Yijing Wu regarding the re-allocation of the Loan funds. Agreement effective the 30th day of June 29, 2018 between Seagoville Farms, LLC, and Ms Yijing Wu.

WHEREAS Seagoville Farms, LLC and Ms Yijing Wu and Wall016, LLC wish to enter into this MOU for the re-allocation of loan funds from Seagoville, LLC to Wall0016, LLC.

Now therefore in exchange of mutual consideration the acceptance of which is hereby acknowledged, the parties agree as follows:

## GENERAL PROVISIONS

1. Re-Allocation of Loan Funds: JMJ, Seagoville, LLC and Wall0016, LLC is authorized by Ms Yijing Wu to re-allocate the current principal of Seagoville Farms, LLC which is $1,920,000 USD to the new land deal transaction Wall0016, LLC.

2. Original Maturity Date: it is hereby agreed that the original maturity date for the loan between Seagoville Farms, LLC and Ms Yijing Wu is Feb 28, 2019.

3. Original Loan Agreement Termination: It is agreed that the Loan Agreement between Seagoville Farms, LLC and Ms Yijing Wu shall be terminated on June 30, 2018.

4. Revised Loan terms for re-allocation to Wall0016, LLC: It is agreed that the revised loan terms shall be as follows:

   a. The new Loan Principal amount shall be $2,000,000 ($1,920,000 original principal plus $80,000 of earned interest)
   b. The new effective date of the loan shall be considered the date this MOU Agreement is fully executed by both all Parties.
   c. The annual interest rate for Ms Yijing Wu will be set at 17.5% for the period of July 1, 2018 to February 28, 2019.
   d. The interest rate shall be adjusted to 15% on February 29, 2019 and shall remain so until the maturity date of the loan which shall be revised to July 2, 2020.

5. Joint Obligations: The parties will cooperate in good faith with one another and will take all appropriate action and execute any documents, instruments or conveyances of any kind that may be reasonably necessary or advisable to carry out any of the transactions contemplated hereunder.

6. Indemnity of the Parties: Each party agrees to defend, indemnify, and hold harmless the other including its affiliates, directors, officers, employees, agents and shareholders (each, an "Indemnified Party"), against any and all claims, actions, demands, liabilities, losses, damages, judgments, settlements, costs, and expenses, including without limitation, interest, penalties, reasonable attorneys' fees and all amounts paid in connection with any claims made or suits brought by a third party against for claims related to the willful misconduct, material misrepresentation, gross negligence, or fraud of the offending party. This provision shall survive the termination or expiration of this agreement.

7. Entire Agreement: This instrument contains the entire agreement among the Parties relating to the subject matter herein and all prior agreements related hereto are terminated. This Agreement may be amended and terminated in writing and upon the unanimous agreement of the Parties

8. Governing Law: This Agreement shall be governed by and construed in accordance with the local, internal laws of the State of Texas with forum and venue being in Dallas, Dallas County, Texas.

9. Successors and Assigns: Subject to restrictions on Transfers and assignments herein, this Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective heirs, legal representatives, successors and assigns.

10. Severability: If any provision of this Agreement or the application thereof to any Person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, but the extent of such invalidity or unenforceability does not destroy the basis of the bargain among the Parties as expressed herein, the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law.

11. Joint Negotiation: The parties acknowledge that each party was actively involved in the negotiation and drafting of this Agreement and that no law or rule of construction shall be raised or used in which the provisions of this Agreement shall be construed in favor or against either party hereto because one is deemed to be the author thereof.

12. Confidentiality: Each party agrees (1) to keep this Agreement, negotiations and information related to the Purpose of this Agreement, and the contents of all related documents confidential and to request its agents, employees, and representatives to keep this Agreement confidential and (2) to not make any public announcements, press releases or similar disclosures related to the subject matter of this Agreement at any time without the written consent of the other parties, provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency or preclude the Parties from making disclosure to its agents, professionals, employees, attorneys, investors and prospective investors and lenders provided each agrees to keep the information provided to them confidential in accordance with the terms of this Section. This provision shall survive termination or expiration of this agreement for a period of 5 years following such termination or expiration.

13. Counterparts and Binding Effect: This Agreement may be executed in one or more counterparts, each of which shall be an original but all of which taken together shall constitute a single document. This Agreement shall be binding upon each Party as evidenced by their signatures below. Faxed or Emailed copies of this agreement shall be binding as the original.

14. Assignability: No party may assign this agreement or their related membership interests without the written approval of the other parties unless the party is (1) assigning to an entity or trust for the purpose of estate planning or (2) assigning this agreement to an entity the assigning party owns a majority interest or the assigning party controls.

15. No Interpretation Against Drafter: This Agreement has been negotiated between unrelated parties who are sophisticated and knowledgeable in the matters contained in this Agreement and who have acted in their own self interest. In addition, each Party has been represented by legal counsel or have been advised to consult with an attorney and had the opportunity to do so. Accordingly, any rule of law, as well as any other statute, law, ordinance, or common law principles or other authority of any jurisdiction of similar effect, or legal decision that would require interpretation of any ambiguities in this Agreement against the party who has drafted it is not applicable and is hereby waived. The provisions of this Agreement shall be interpreted in a reasonable manner to affect the purpose of the Parties, and this Agreement shall not be interpreted or construed against any party to

Initials:

this Agreement because that party or any attorney or representative for that party drafted this Agreemen participated in the drafting of this Agreement.

16. Notices: Notifications, as defined above, given under this Agreement shall be duly given to the appropr addresses by certified mail return receipt requested, e-mail addresses (with confirmation of delivery), an facsimile numbers (with confirmation of delivery) set forth below (or to such other addresses and facsi numbers as a party may designate as to itself by notice to the other):

IN WITNESS WHEREOF, the parties have executed this Agreement on the 30th day June 2018.

**SEAGOVILLE FARMS, LLC**

**Tim Barton, President**

**MS YIJING WU**

**BY: MS YIJING WU**

**WALL016, LLC**

**Tim Barton, President**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL016, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF LI JIANG IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/21/2020

DocuSigned by:
Li Jiang
213B9409FBED46E...
LI JIANG

218182852v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___August 20___, 2018, and is between __Jiang Li___ (Passport No: __EA3681029___), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 016, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ __200,000___ of the total loan amount of $3,880,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $_200,000___-_ Two Hundred Thousand _ __and No/100 Dollars

Interest: Interest amount equal to _ Eleven ___ percent (_11_%) per annum commencing on __September 1st, 2018___, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _September 1st, 2019__. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __September 1st, 2020___. Sums not paid by such times, shall bear interest at the rate of Thirteen _ percent (__13_%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 160 acres located in in Ft Worth ETJ, Parker County, State of Texas for residential lot development known as Lyons Ranch ("Property"). The Property has a purchase price of $4,850,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:
Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER:
Wall 016, LLC
c/o Tim Barton
1755 Wittington Place, Suite 340
Dallas, TX 75234
tbarton@jmjdevelopment.net
972-385-9934 (office)

TO CO-LENDER:
Jiang Li
1-5-401，North dormitory, Haidian Health Bureau,
Qinghe 3rd Street, Haidian District, Beijing, China
kwj80@163.com
(86) 13611224740

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Jiang Li
213B9409FBED46E...

"**BORROWER**"

WALL 016, LLC

DocuSigned by:
Tim Barton
55E2C214E42B42F...

By: ______________________________

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 016, LLC

"**AGENT**"

PLATINUM INVESTMENT CORPORATION

DocuSigned by:
Michael Fu
86EE266F063C423...

By: ______________________________

Name: Michael Fu
Title: Chief Executive Officer

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___August 22___, 2018, and is between __Jiang Li___ (Passport No: __EA3681029___), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 016, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ __100,000___ of the total loan amount of $3,880,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $_100,000___- _ One Hundred Thousand ___and No/100 Dollars

Interest: Interest amount equal to _ Eleven __ percent (_11_%) per annum commencing on __September 1st, 2018___, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _September 1st, 2019__. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __ September 1st, 2020 ___. Sums not paid by such times, shall bear interest at the rate of Thirteen _ percent (__13_%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 160 acres located in in Ft Worth ETJ, Parker County, State of Texas for residential lot development known as Lyons Ranch ("Property"). The Property has a purchase price of $4,850,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## <u>Default and Acceleration</u>

4.1 <u>Events of Default</u>. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 <u>Optional Acceleration</u>. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:
Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER:
Wall 016, LLC
c/o Tim Barton
1755 Wittington Place, Suite 340
Dallas, TX 75234
tbarton@jmjdevelopment.net
972-385-9934 (office)

TO CO-LENDER:
Jiang Li
1-5-401， North dormitory, Haidian Health Bureau,
Qinghe 3rd Street, Haidian District, Beijing, China
kwj80@163.com
(86) 13611224740

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Jiang Li
213B9409FBED46E...
________________________________________

"**BORROWER"**

WALL 016, LLC

DocuSigned by:
Tim Barton
55E2C214E42B42F...

By: ________________________________________

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 016, LLC

"**AGENT"**

PLATINUM INVESTMENT CORPORATION

DocuSigned by:
Michael Fu
86EE266F063C423...

By: ________________________________________
Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL016, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF QIN CHU IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/23/2020

DocuSigned by:
Qin Chu
C0E7ADA1861E41E...
QIN CHU

218182859v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___September 7___, 2018, and is between __Chu Qin___ (Passport No: __G35777596___), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 016, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ __200,000___ of the total loan amount of $3,880,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $_200,000___- _ Two Hundred Thousand _ __and No/100 Dollars

Interest: Interest amount equal to _ Ten ___ percent (_10_%) per annum commencing on __October 1st, 2018__, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _October 1st, 2019__. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __October 1st, 2020___. Sums not paid by such times, shall bear interest at the rate of _Twelve _ percent (__12_%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 160 acres located in in Ft Worth ETJ, Parker County, State of Texas for residential lot development known as Lyons Ranch ("Property"). The Property has a purchase price of $4,850,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute “activity” to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys’ fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments (“Loan Papers”) collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:
Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER:
Wall 016, LLC
c/o Tim Barton
1755 Wittington Place, Suite 340
Dallas, TX 75234
tbarton@jmjdevelopment.net
972-385-9934 (office)

TO CO-LENDER:
Chu Qin
No.13 Plant Building,No 8 Hangdu Rd, Damaiwan
Industrial District, Hangtou Town, Pudong New Area,
Shanghai, China
gracechu@evan.com.cn
(86) 13917538546

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Chu Qin
C0E7ADA1861E41E...
______________________________

"**BORROWER"**

WALL 016, LLC

DocuSigned by:
Tim Barton
By: ______________________________
55E2C214E42B42F...
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 016, LLC

"**AGENT"**

PLATINUM INVESTMENT CORPORATION

DocuSigned by:
Michael Fu
By: ______________________________
86EE266F063C423...
Name: Michael Fu
Title: Chief Executive Officer

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___September 19___, 2018, and is between __Chu Qin___ (Passport No: __G35777596___), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 016, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ __200,000___ of the total loan amount of $3,880,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $_200,000___- _ Two Hundred Thousand _ __and No/100 Dollars

Interest: Interest amount equal to _ Ten ___ percent (_10_%) per annum commencing on __October 1st, 2018__, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _ October 1st, 2019 __. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __October 1st, 2020___. Sums not paid by such times, shall bear interest at the rate of _Twelve _ percent (__12_%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 160 acres located in in Ft Worth ETJ, Parker County, State of Texas for residential lot development known as Lyons Ranch ("Property"). The Property has a purchase price of $4,850,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute “activity” to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys’ fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments (“Loan Papers”) collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

| | |
|---|---|
| TO AGENT: | Platinum Investment Corporation<br>Attn: Michael Fu<br>B4-1015 West Lake International<br>Hangzhou<br>Michael@yding.cn<br>281-318-8611 |
| TO BORROWER: | Wall 016, LLC<br>c/o Tim Barton<br>1755 Wittington Place, Suite 340<br>Dallas, TX 75234<br>tbarton@jmjdevelopment.net<br>972-385-9934 (office) |
| TO CO-LENDER: | Chu Qin<br>No.13 Plant Building,No 8 Hangdu Rd, Damaiwan Industrial District, Hangtou Town, Pudong New Area, Shanghai, China<br>gracechu@evan.com.cn<br>(86) 13917538546 |

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Chu Qin
C0E7ADA1861E41E...
_______________ 9/19/2018

"**BORROWER"**

WALL 016, LLC

DocuSigned by:
Tim Barton
55E2C214E42B42F...
By: _______________ 9/21/2018

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 016, LLC

"**AGENT"**

PLATINUM INVESTMENT CORPORATION

DocuSigned by:
Michael Fu
86EE266E063C423...
By: _______________ 9/19/2018

Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL016, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF YULAN CHEN IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/23/2020

DocuSigned by:
Yulan Chen
04838D531BC14A3...
YULAN CHEN

218182865v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated _September 17_, 2018, and is between __Chen Yulan___ (Passport No: __G42737146___), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 016, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ __100,000___of the total loan amount of $3,880,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $_100,000___-_ One Hundred Thousand ___and No/100 Dollars

Interest: Interest amount equal to __Fifteen___ percent (_15_%) per annum commencing on __October 1st, 2018__, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _October 1st, 2019__. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __October 1st, 2020__. Sums not paid by such times, shall bear interest at the rate of _Seventeen_ percent (_17_%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 160 acres located in in Ft Worth ETJ, Parker County, State of Texas for residential lot development known as Lyons Ranch ("Property"). The Property has a purchase price of $4,850,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute “activity” to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys’ fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments (“Loan Papers”) collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:

Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER:

Wall 016, LLC
c/o Tim Barton
1755 Wittington Place, Suite 340
Dallas, TX 75234
tbarton@jmjdevelopment.net
972-385-9934 (office)

TO CO-LENDER:

Chen Yulan
Room 12-303, No.1065, Gu Long Road, Shanghai, China
2931506@qq.com
(86) 18281553124

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the

Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Chen Yulan
2D7A23F883D54D8... 9/19/2018

"**BORROWER"**

WALL 016, LLC

DocuSigned by:
By: Tim Barton
55E2C214E42B42F... 9/21/2018

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 016, LLC

"**AGENT"**

PLATINUM INVESTMENT CORPORATION

DocuSigned by:
By: Michael Fu
86EE266F063C423... 9/18/2018

Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL016, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF SICHENG ZHAN IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/21/2020

DocuSigned by:
Sicheng Zhan
DCF03F72A019452...
SICHENG ZHAN

218182873v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated _September 10 _, 2018, and is between _Zhan Sicheng___ (Passport No: __G51453838___), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 016, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ __130,000___ of the total loan amount of $3,880,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $_130,000_- One Hundred and Thirty Thousand _ and No/100 Dollars

Interest: Interest amount equal to _ Ten ___percent (_10_%) per annum commencing on __October 1st, 2018 or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _October 1st, 2019 __. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __October 1st, 2020 __. Sums not paid by such times, shall bear interest at the rate of Twelve _ percent (_12_%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 160 acres located in in Ft Worth ETJ, Parker County, State of Texas for residential lot development known as Lyons Ranch ("Property"). The Property has a purchase price of $4,850,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:

Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER:

Wall 016, LLC
c/o Tim Barton
1755 Wittington Place, Suite 340
Dallas, TX 75234
tbarton@jmjdevelopment.net
972-385-9934 (office)

TO CO-LENDER:

Zhan Sicheng
3001 Biyadi Road, Pingshan District, Shenzhen,
Guangdong, China
zhan.janson@gmail.com
(86) 18620332094

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Sicheng Zhan
DCF03F72A019452...
________________________________________

"**BORROWER**"

WALL 016, LLC

DocuSigned by:
Tim Barton
By: _________55E2C214E42B42F..._________________
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 016, LLC

"**AGENT**"

PLATINUM INVESTMENT CORPORATION

DocuSigned by:
Michael Fu
By: _________86EE266F063C423..._________________
Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL016, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF PEI GUAN IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/22/2020

DocuSigned by:
Pei Guan
48E869D934834A4...
PEI GUAN

218182876v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___July 25___, 2018, and is between __Guan Pei___ (Passport No: __G27500096___), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 016, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ __100,000___ of the total loan amount of $3,880,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $_100,000___- _ One Hundred Thousand _ __and No/100 Dollars

Interest: Interest amount equal to __ Twelve ___ percent (_12_%) per annum commencing on __August 1st, 2018__, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _ August 1st, 2019 __. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __ August 1st, 2020 __. Sums not paid by such times, shall bear interest at the rate of Fourteen _ percent (_14_%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 160 acres located in in Ft Worth ETJ, Parker County, State of Texas for residential lot development known as Lyons Ranch ("Property"). The Property has a purchase price of $4,850,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute “activity” to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys’ fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments (“Loan Papers”) collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT: Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER: Wall 016, LLC
c/o Tim Barton
1755 Wittington Place, Suite 340
Dallas, TX 75234
tbarton@jmjdevelopment.net
972-385-9934 (office)

TO CO-LENDER: Guan Pei
#6101 Building 1, No.36 Zengguang Road,
Beijing, China
2875823@qq.com
(86) 13671039097

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Guan Pei
48E869D934834A4...
______________________________

"**BORROWER"**

WALL 016, LLC

DocuSigned by:
Tim Barton
By: ______________________________
55E2C214E42B42F...
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 016, LLC

"**AGENT"**

PLATINUM INVESTMENT CORPORATION

DocuSigned by:
Michael Fu
By: ______________________________
86EE266F063C423...
Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL016, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF JINGQIU TANG IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/21/2020

DocuSigned by:
Jingqiu Tang
ACF7CC4E584C48D...
JINGQIU TANG

218182885v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated __September 21_, 2018, and is between _Tang Jinqiu__ (Passport No: __G42882925___), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 016, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ __100,000___ of the total loan amount of $3,880,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $_100,000___- _ One Hundred Thousand _ __and No/100 Dollars

Interest: Interest amount equal to _ Eleven ___ percent (_11_%) per annum commencing on __October 1st, 2018__, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _ October 1st, 2019 __. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __ October 1st, 2020 ___. Sums not paid by such times, shall bear interest at the rate of Thirteen _ percent (__13_%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 160 acres located in in Ft Worth ETJ, Parker County, State of Texas for residential lot development known as Lyons Ranch ("Property"). The Property has a purchase price of $4,850,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

| | |
|---|---|
| TO AGENT: | Platinum Investment Corporation<br>Attn: Michael Fu<br>B4-1015 West Lake International<br>Hangzhou<br>Michael@yding.cn<br>281-318-8611 |
| TO BORROWER: | Wall 016, LLC<br>c/o Tim Barton<br>1755 Wittington Place, Suite 340<br>Dallas, TX 75234<br>tbarton@jmjdevelopment.net<br>972-385-9934 (office) |
| TO CO-LENDER: | Tang Jinqiu<br>4-1804, Ronghui Jiangshan, No 289 West Yangqiao Rd,<br>Fuzhou, Fujian, China<br>417177286@qq.com<br>(86) 13705953815 |

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Tang Jingjiu
ACF7CC4E584C48D... 9/24/2018
________________________________________

"**BORROWER"**

WALL 016, LLC

DocuSigned by:
Tim Barton
By: 55E2C214E42B42F... 9/25/2018
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 016, LLC

"**AGENT"**

PLATINUM INVESTMENT CORPORATION

DocuSigned by:
Michael Fu
By: 86EE266F063C423... 9/21/2018
Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL016, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF DI TANG IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/30/2020

DocuSigned by:
1B99C82DCCFA404...
DI TANG

218182899v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___September 21 __, 2018, and is between __Tang Di__ (Passport No: __ED8190323___), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 016, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ __100,000___ of the total loan amount of $3,880,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $_100,000___- _ One Hundred Thousand ___and No/100 Dollars

Interest: Interest amount equal to _ Ten ___percent (_10_%) per annum commencing on __October 1st, 2018 or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _October 1st, 2019 __. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __October 1st, 2020 __. Sums not paid by such times, shall bear interest at the rate of Twelve _ percent (_12_%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 160 acres located in in Ft Worth ETJ, Parker County, State of Texas for residential lot development known as Lyons Ranch ("Property"). The Property has a purchase price of $4,850,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

| | |
|---|---|
| TO AGENT: | Platinum Investment Corporation<br>Attn: Michael Fu<br>B4-1015 West Lake International<br>Hangzhou<br>Michael@yding.cn<br>281-318-8611 |
| TO BORROWER: | Wall 016, LLC<br>c/o Tim Barton<br>1755 Wittington Place, Suite 340<br>Dallas, TX 75234<br>tbarton@jmjdevelopment.net<br>972-385-9934 (office) |
| TO CO-LENDER: | Tang Di<br>F05-05C, Fenglin Lvzhou, Datun Rd, Chaoyang District, Beijing, China<br>tangdi98@gmail.com<br>(86) 13901032830 |

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
1B99C82DCCFA404... 9/22/2018
________________________________________

"**BORROWER**"

WALL 016, LLC

DocuSigned by:
By: Tim Barton 9/25/2018
55E2C214E42B42F...
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 016, LLC

"**AGENT**"

PLATINUM INVESTMENT CORPORATION

DocuSigned by:
By: Michael Fu 9/21/2018
86EE266E063C423...
Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL016, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF JUN ZENG IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/24/2020

DocuSigned by:
Zeng Jun
863965F351CA495...
JUN ZENG

218182903v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated _July 28___, 2018, and is between ____Zeng Jun___ (Passport No: ___E21730486___), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 016, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ __100,000____of the total loan amount of $3,880,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $_100,000_____- __One Hundred Thousand_ and No/100 Dollars

Interest: Interest amount equal to ___Ten_____ percent (_10_%) per annum commencing on ___August 1st, 2018_____, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after __August 1st, 2019___. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of ___August 1st, 2020__. Sums not paid by such times, shall bear interest at the rate of __Twelve___ percent (_12__%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 160 acres located in in Ft Worth ETJ, Parker County, State of Texas for residential lot development known as Lyons Ranch ("Property"). The Property has a purchase price of $4,850,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute “activity” to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys’ fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments (“Loan Papers”) collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT: Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER: Wall 016, LLC
c/o Tim Barton
1755 Wittington Place, Suite 340
Dallas, TX 75234
tbarton@jmjdevelopment.net
972-385-9934 (office)

TO CO-LENDER: Zeng Jun
Room 232, No.21 Er Wei Rd., Shen He District,
Shenyang City, Liao Ning Province, China
zjun2@126.com
(86)13704272071

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Zeng Jun
863965F351CA495...
______________________________

"**BORROWER"**

WALL 016, LLC

DocuSigned by:
Tim Barton
By: ______________________________ 55E2C214E42B42F...
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 016, LLC

"**AGENT"**

PLATINUM INVESTMENT CORPORATION

DocuSigned by:
Michael Fu
By: ______________________________ 86EE266F063C423...
Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL016, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF KUI WANG IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/22/2020

DocuSigned by:
18A3C786642948A...
KUI WANG

218182907v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___August 8 ___, 2018, and is between __Wang Kui___ (Passport No: __G35722445___), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 016, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ __100,000___ of the total loan amount of $3,880,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $_100,000___- _ One Hundred Thousand _ __and No/100 Dollars

Interest: Interest amount equal to _ Ten ___percent (_10_%) per annum commencing on __September 1st, 2018 or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _ September 1st, 2019 __. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __ September 1st, 2020 __. Sums not paid by such times, shall bear interest at the rate of _Twelve _ percent (_12_%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 160 acres located in in Ft Worth ETJ, Parker County, State of Texas for residential lot development known as Lyons Ranch ("Property"). The Property has a purchase price of $4,850,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:
Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER:
Wall 016, LLC
c/o Tim Barton
1755 Wittington Place, Suite 340
Dallas, TX 75234
tbarton@jmjdevelopment.net
972-385-9934 (office)

TO CO-LENDER:
Wang Kui
Rm 1103, No.18, Baiwanzhuang Rd., Xicheng District,
Beijing, China
wangkuicn@126.com
(86) 13801131738

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
18A3C786642948A...
______________________________

"**BORROWER**"

WALL 016, LLC

DocuSigned by: Tim Barton
55E2C214E42B42F...
By: ______________________________
Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 016, LLC

"**AGENT**"

PLATINUM INVESTMENT CORPORATION

DocuSigned by: Michael Fu
86FF266F063C423...
By: ______________________________
Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL016, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF YUE ZHANG IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/21/2020

DocuSigned by:
Yue Zhang
0CBE0AE2950E48F...
YUE ZHANG

218182913v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated ___July 26___, 2018, and is between __Zhang Yue___ (Passport No: __E24004107___), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 016, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ __100,000___ of the total loan amount of $3,880,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $_100,000___- _ One Hundred Thousand _ __and No/100 Dollars

Interest: Interest amount equal to _ Ten ___ percent (_10_%) per annum commencing on __August 1st, 2018__, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _August 1st, 2019__. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __August 1st, 2020__. Sums not paid by such times, shall bear interest at the rate of Twelve _ percent (_12_%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 160 acres located in in Ft Worth ETJ, Parker County, State of Texas for residential lot development known as Lyons Ranch ("Property"). The Property has a purchase price of $4,850,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT:

Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER:

Wall 016, LLC
c/o Tim Barton
1755 Wittington Place, Suite 340
Dallas, TX 75234
tbarton@jmjdevelopment.net
972-385-9934 (office)

TO CO-LENDER:

Zhang Yue
Room 1-304, Building No.9, Tianzhaojiayuan,
No.41 Xizhimen N street,
Haidian District, China
450177716@qq.com
(86) 13901086803

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Zhang Yue
0CBE0AE2950E48F...
______________________________

"**BORROWER**"

WALL 016, LLC

By: ______________________________
DocuSigned by:
Tim Barton
55E2C214E42B42F...

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 016, LLC

"**AGENT**"

PLATINUM INVESTMENT CORPORATION

By: ______________________________
DocuSigned by:
Michael Fu
86EE266F063C423...

Name: Michael Fu
Title: Chief Executive Officer

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| In re:<br><br>WALL016, LLC,<br><br>Alleged Debtor. | Chapter 7<br><br>Case No. |

**DECLARATION OF JUN WANG IN SUPPORT OF INVOLUNTARY PETITION**

Petitioning Creditor below, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States, as follows:

1. I am a citizen of the People's Republic of China, and I am a Petitioning Creditor of the above-captioned alleged debtor (the "Alleged Debtor"). I have firsthand knowledge of the facts as set forth herein.

2. Pursuant to a certain Loan Agreement, by and between Petitioning Creditor on the one hand, and the Alleged Debtor on the other hand (the "Loan Agreement"), Petitioning Creditor loaned monies to the Alleged Debtor on the terms and conditions more fully set forth in the Loan Agreement. A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

3. The Alleged Debtor is in default of the Loan Agreement as a result of, among other things, its failure to repay sums as and when due thereunder.

4. More specifically, one or more interest payment(s) came due under the Loan Agreement and remain unpaid.

5. As of the date hereof, Petitioning Creditor holds a claim against the Alleged Debtor for the principal amount set forth, interest and other charges as may be applicable under the Loan Agreement and/or under applicable law (the "Claim").

6. The Claim of Petitioning Creditor is not contingent as to liability, nor is the Claim subject to a bona fide dispute as to the liability or amount thereof.

I certify pursuant 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: 3/23/2020

DocuSigned by:
Jun Wang
E631C736E765451...
JUN WANG

218182917v1

# AGENCY AND LOAN AGREEMENT

THIS AGREEMENT is dated September 18 , 2018, and is between _Wang Jun (Passport No: __G20956333___), ("Co-Lender,"), PLATINUM INVESTMENT CORPORATION ("Agent") and WALL 016, LLC ("Borrower").

## ARTICLE ONE

## The Loan

1.1 The Loan. Co-Lender, together with other lenders ("Additional Co-Lenders"), upon the terms and subject to the conditions hereinafter set forth and on the date of this Agreement, agrees to make a loan to Borrower (the "Loan") for the purpose as set forth herein.

(a) Agency: Co-Lender, hereby appoints Agent, who will act as agent for Co-Lender and the Additional Co-Lenders for the purpose of entering into the loan documents for the Loan. Co-Lender acknowledges that Agent has no liability for the repayment of the Loan, and that such obligation will be the responsibility of Borrower.

(b) Terms of Lender Commitment: Co-Lender agrees to lend $ __50,000___ of the total loan amount of $3,880,000 ("Commitment"). Co-Lender acknowledges that a condition of the Loan being made is that the Additional Co-Lenders fund sufficient amounts ("Additional Loans") to total the Commitment. If the Loan is funded, interest and principal shall be paid by Borrower to Co-Lender as follows:

Principal and interest:

Principal: USD $_50,000___- _ Fifty Thousand_ _and No/100 Dollars

Interest: Interest amount equal to _ Ten __ percent (_10_%) per annum commencing on __October 1st, 2018__, or such later date that the Loan is funded to Borrower. The first year's interest will be due to the Lender, within ten (10) business days after _October 1st, 2019__. The second year's interest, together with the total principal shall be paid to the Lender within ten (10) business days of __October 1st, 2020___. Sums not paid by such times, shall bear interest at the rate of _Twelve _ percent (__12_%) per annum from the dates payments were due.

Agent shall serve as administrator on behalf of the Co-Lender and Additional Co-Lenders, in the administration of the Loan and Additional Loans. Agent's fee for such services shall be paid by Borrower. Wherever this Agreement requires payment to Co-Lender, such payments shall be made to Agent on behalf of Co-Lender and the Additional Co-Lenders.

(c) Loan Purpose:

(i) The Loan shall be evidenced by this Agreement. The Loans and the Additional Loans shall be used to acquire 160 acres located in in Ft Worth ETJ, Parker County, State of Texas for residential lot development known as Lyons Ranch ("Property"). The Property has a purchase price of $4,850,000 and the balance of funds will be provided by Borrower.

(ii) No Commitment for Additional/Permanent Financing: **BORROWER ACKNOWLEDGES AND AGREES THAT LENDER HAS NOT MADE ANY COMMITMENTS EITHER EXPRESS OR IMPLIED, TO EXTEND THE TERM OF THE LOAN PAST ITS STATED MATURITY DATE OR TO PROVIDE BORROWER WITH PERMANENT FINANCING ONCE THE INITIAL TERM OF THE LOAN HAS EXPIRED OR WITH ANY ADDITIONAL FINANCING WHICH BORROWER MAY NEED.**

1.2. Pre-payment. Borrower may prepay the Loan in part or in full without penalty at any time before final maturity, by cash or check. Prepayment in full shall consist of payment of the remaining unpaid principal balance together with all accrued and unpaid interest to the date of repayment and all other amounts, costs and expenses for which Borrower is responsible under any other agreement with Lender pertaining to the Loan, and in no event will Borrower ever be required to pay any unearned interest. Any prepayments shall be applied first to charges for which Borrower is responsible, then to interest and then to principal. Prepayments shall be applied to payments next due under the Loan.

## ARTICLE TWO

## Representations of Borrower

Borrower represents, covenants, and warrants that:

2.1 Representations. All representations and warranties made by Borrower pursuant to this Loan Agreement are true and correct.

2.2 Power and Authority: Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas and is duly qualified to do business and in good standing in all states in which the conduct of its operations or the ownership of its properties requires such qualification. The execution, delivery and performance by Borrower of this Agreement and all other Loan Papers to which it is a party have been duly authorized by all necessary corporate action and they have full power and authority to conduct their business and to carry out all of the terms and conditions hereof.

2.3 Violation of Law; Breach of Agreements. The execution, delivery and performance by Borrower of the Loan Papers do not and will not:

(a) Violate any provision of any law, rule, regulation, order, judgment, injunction, or determination presently in effect having applicability to Borrower; or

(b) Result in the breach of or constitute a default under the certificate of incorporation, bylaws, any indenture, agreement, or instrument to which Borrower is a party or by which its properties may be bound or affected.

2.4 Enforceability. The Loan Papers constitute legal, valid, and binding obligations of Borrower, enforceable against Borrower, in accordance with their respective terms, except to the extent that such enforcement may be limited by applicable Bankruptcy, insolvency, and other similar laws affecting creditors' rights generally.

2.5 Taxes. All Federal and State tax returns of Borrower have been appropriately filed and the taxes paid except those for which extensions have been obtained.

## ARTICLE THREE

## Affirmative Covenants of Borrower

3.1 Covenants

(a) Borrower shall not effectuate a change in its businesses as is conducted on the date of this Agreement.

(b) All financial information prepared by Borrower and delivered to Lender, shall be prepared in accordance with sound accounting principles, consistently applied.

(c) Without limiting the terms of this Agreement or any of the other Loan Papers, to the extent not prohibited by applicable law, Borrower will pay all reasonable costs and expenses and reimburse Lender for any and all reasonable out-of-pocket expenditures incurred or expended from time to time, in connection with expenses relating to Lender's exercising any of its rights and remedies under the Loan Papers or at law, including, without limitation, all filing fees, taxes, Uniform Commercial Code search fees, other fees and expenses incident to title searches, reports and security interests, escrow fees, reasonable attorneys' fees, reasonable legal expenses, court costs, fees and expenses incurred in connection with any complete or partial liquidation of such property, and all fees and expenses for any professional service relating to such property or any operations conducted in connection with it.

3.2 Borrower shall immediately notify Lender upon the occurrence of any condition, event or act that would constitute a Default or any Event of Default under this Agreement or upon the occurrence of any change in the condition (financial or otherwise) of Borrower that would materially affect Borrower's ability to repay the indebtedness created hereby.

3.3 Borrower will pay the Loan according to its terms and will do and perform every act and discharge all of the obligations provided to be performed and discharged under this Agreement and any and all of the instruments referred to or mentioned herein at the time or times and in the manner herein specified.

3.4 Borrower will promptly cure any defects in the execution and delivery of this Agreement and any other instrument or instruments referred to or mentioned herein and will immediately execute and deliver to Lender, upon request, any instrument required to accomplish the covenants and agreements of Borrower.

3.5 Borrower will, in the Event of Default, upon request, within ten (10) days from said request, reimburse Lender for all amounts extended, advanced or incurred by Lender to satisfy any obligation of Borrower under this Agreement, or to protect the properties, assets or business of Borrower or to enforce the rights of Lender under this Agreement or any other instrument referred to or mentioned herein or executed or to be executed in connection herewith, which amounts will include all court costs, reasonable attorney's fees, reasonable fees of auditors and accountants, and investigation expenses reasonably incurred by Lender in connection with any such matters, together with interest at the contract rate on each such amount from the date that the same is due and payable to Lender until the date it is repaid to Lender.

3.6 Borrower will maintain its legal existence, remain in good standing in each jurisdiction in which it is required to be qualified, maintain all franchises and licenses necessary in its business, and comply with all valid and applicable statutes, rules and regulations, and it will maintain or cause to be maintained its properties and equipment in good and workable condition at all times.

## ARTICLE FOUR
## Default and Acceleration

4.1 Events of Default. An event of default shall exist if any one or more of the following events (hereinafter collectively referred to as "Events of Default") shall occur and be continuing:

(a) Failure to pay any principal or interest on any Indebtedness to Lender when due or declared due and such failure shall continue for fifteen (15) days following written notice of such failure is given by Lender to Borrower.

(b) Default in the observance or performance of any of the covenants, terms or agreements of this Agreement or any other document or instrument executed by Borrower, and such failure shall continue for thirty (30) days following written notice of such failure is given by Lender to Borrower.

4.2 Optional Acceleration. Upon the occurrence of any Event of Default, at Lender's option, all or any part of this Indebtedness owing to Lender shall forthwith become due and payable, without prior presentment, demand, notice of default, notice of acceleration, or notice of any kind, all of which are hereby waived.

4.3 Automatic Acceleration. All Indebtedness owing to Lender shall automatically and immediately become due and payable in full, without notice or demand, upon the appointment of a receiver or a liquidator for benefit of creditors, whether voluntary or involuntary, for Borrower, or surety or for any of their property or upon the commencement of any proceeding under any Bankruptcy or insolvency law by or against Borrower or surety for Borrower.

4.4 Right of Set Off. Upon the occurrence and during the continuance of any Event of Default, the Lender is hereby authorized at any time and from time to time, without notice to the Borrower to set off and apply any and all deposits of Borrower at any time held and other indebtedness at any time owing by the Lender to or for the credit or the account of the Borrower against any and all of the obligations of the Borrower now or hereafter existing under this Agreement, irrespective of whether or not the Lender shall have made any demand under this Agreement and although such obligations may be unmatured. The Lender agrees promptly to notify the Borrower after any such set off and application, provided that the failure to give such notice shall not affect the validity of such set off and application or otherwise result in liability to the secured party. The rights of the Lender under this paragraph are in addition to other rights and remedies (including without limitation other rights of set off) which the Lender may have.

4.5 Progress Reporting. Borrower shall agree to provide quarterly progress reports to Lender outlining the ongoing status of the development, which shall include: the platting, design, engineering, and construction drawings, all of which shall constitute "activity" to the land prior to actual physical development of the land.

## ARTICLE FIVE

## Miscellaneous

5.1 Definitions. Indebtedness as used in this Loan Agreement means all present and future debt, obligations and liabilities of Borrower to Lender presently existing or which may in any manner or means hereafter be incurred or evidenced, including but not limited to notes, advances, overdrafts, bookkeeping entries, renewals, extensions, endorsements, and guaranties, plus costs and expenses to obtain, preserve and enforce this Loan Agreement and all agreements and instruments, and to collect the Indebtedness and to secure, maintain, preserve, and dispose of collateral, together with all interest and reasonable attorneys' fees.

5.2 Construing Loan Papers. This Loan Agreement, and all other loan documents, papers and instruments ("Loan Papers") collectively constitute the evidence of Indebtedness owing to Lender and the rights and obligations of the parties hereto, and are to be construed as supplemental to each other.

5.3 Renewals and Extensions. This Loan Agreement shall also apply to any and all renewals and extensions, loans and advancements to Borrower.

5.4 Texas Law. This Loan Agreement, and the other Loan Papers shall be construed under the laws of the State of Texas.

5.5 Maximum Rate of Interest. The terms of this Loan Agreement have been made on the assumption that all payments will be made as scheduled. In the event any interest paid to Lender is in excess of the maximum non-usurious rate permitted by the usury laws of Texas and the United States as construed by courts having jurisdiction thereof, whether by reason of prepayment, acceleration or otherwise, such interest shall be considered for all purposes as payment on principal and so credited to the Loan. The right to demand any such excess interest shall be and is hereby waived and any payment of any amount in excess of the legal rate shall be considered a mistake with the excess being applied to the principal of the Loan, and if all Indebtedness is paid, the excess shall be refunded to Maker.

5.6 Collateral. 100% of the membership interests in Borrower ("Collateral") shall be pledged to secure the Loan and the Additional Loans pursuant to a Pledge Agreement ("Pledge Agreement") that will be given to Agent on behalf of the Lender and Co-Lenders. Each of the Lender and Co-Lenders shall share pro rata in the Collateral pursuant to the Pledge Agreement.

5.7 Guarantee. JMJ Holdings, as Guarantor, hereby provides a corporate guarantee up to the principal loan amount in the event of default by Borrower.

5.8 Notice. Unless otherwise provided herein, all notices, requests, consents and demands shall be in writing and shall be mailed, postage prepaid, addressed as follows:

TO AGENT: Platinum Investment Corporation
Attn: Michael Fu
B4-1015 West Lake International
Hangzhou
Michael@yding.cn
281-318-8611

TO BORROWER: Wall 016, LLC
c/o Tim Barton
1755 Wittington Place, Suite 340
Dallas, TX 75234
tbarton@jmjdevelopment.net
972-385-9934 (office)

TO CO-LENDER: Wang Jun
Rm 1602, No.38, Shanglongxili Community, Anding Menwai Street,Dongcheng District, Beijing, China
1508225788@qq.com
(86) 15210393532

5.9 Place of Payment. All sums payable hereunder to Lender shall be payable at the offices of Lender at the address indicated above or such other place as the owner shall hereafter designate by written notice to Borrower.

5.10 Representations Survive. All covenants, agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement in the making of the Loan. All statements contained in any certificate or other instrument delivered by Borrower, hereunder shall be deemed to constitute representation and warranties made by Borrower.

5.11 No Waiver. No waiver or consent by Lender with respect to any act or omission of Borrower on one occasion shall constitute a waiver or consent with respect to any other act or omission by Borrower on the same or any other occasion, and no failure on the part of Lender to exercise and no delay in exercising any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further right of exercise thereof or the exercise of any other right.

5.12 Confidentiality. The Lender agrees to keep the contents of all financial documents and other information delivered to Lender as part of this agreement confidential and to request its agents and representatives to keep such information confidential provided that nothing contained in this Agreement shall prohibit disclosure of any matter to the extent required by law or order of any court or administrative agency. The provisions of the Section shall survive Closing or any termination of this Agreement.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

*[Signatures appear on following page]*

**"CO-LENDER"**

DocuSigned by:
Wang Jun
569106D448FB466... 9/29/2018
_______________________________

"**BORROWER"**

WALL 016, LLC

DocuSigned by:
Tim Barton 10/30/2018
By: ______55E2C214E42B42F...______________

Tim Barton as President of Carnegie Development, LLC,
The Managing Member of Wall 016, LLC

"**AGENT"**

PLATINUM INVESTMENT CORPORATION

DocuSigned by:
Michael Fu
By: ______86EE266F063C423...______________

Name: Michael Fu
Title: Chief Executive Officer